EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

DILLARD L. SUMNER, JR.,

                        Plaintiff,

v.                                                Civil Action No. 3:15-CV-42

MARY WASHINGTON HEALTHCARE
PHYSICIANS, *et al.*,

                        Defendants.

**MEMORANDUM OPINION**

THIS MATTER is before the Court on Defendants' Partial Motion to Dismiss ("Motion") (ECF No. 23) pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiff filed a response in opposition on April 28, 2015 ("Opp'n Mem.") (ECF No. 25), and Defendants subsequently filed a reply on May 4, 2015 ("Reply Mem.") (ECF No. 26). The parties have not requested a hearing on this matter, and the Court finds that oral argument is unnecessary. *See* E.D. Va. Loc. Civ. R. 7(J). For the reasons set forth below, the Motion is GRANTED.

**I.    BACKGROUND**

This civil action against Defendants, Mary Washington Healthcare Physicians d/b/a Mary Washington Healthcare ("MWHC"), and Kathy Wall ("Wall") (collectively, the "Defendants"), alleges interference with the exercise of rights granted under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq.*, and retaliation in violation of the FMLA when Plaintiff, D.L. Sumner ("Sumner" or "Plaintiff"), was terminated after exercising his FMLA rights.

Sumner was employed by MWHC beginning in July 2007 as the "Director, Compensation and Benefits & HRIS." (Am. Compl. ¶ 18.) Wall was, and is, the Executive Vice President of Human Relations for MWHC, and Sumner's direct supervisor. Sumner was an

1

"eligible employee" of MWHC within the meaning of 29 U.S.C. § 2611(2)(A)[1], and MWHC and Wall are "employers" within the meaning of 29 U.S.C. § 2611(4)(A)[2].

Sumner has been diabetic for over 20 years, and in October 2012 Sumner required surgery on his right foot due to an open wound that did not heal properly as a result of diabetes-related complications, and which became infected, advancing into the bone. The surgery resulted in amputation of the fifth metatarsal bone of Sumner's right foot. Sumner was absent from work on FMLA medical leave for six weeks due to the surgery. During his absence, work in the Compensation department fell only slightly behind, and the department was able to meet most schedules on time. Prior to taking this leave, Sumner had explained to Wall about his underlying medical condition which necessitated the surgery.

On March 5, 2014, Wall received a list of "High Risk Individuals" under the company's health plan, which was a list of individuals with higher risk profiles, and therefore higher health care premiums. Sumner was included on this list and classified as a "substantial risk" since he possessed three of the four major factors identifying high risk individuals.

In mid-March 2014, Sumner developed another bone infection in his left foot, also from an open wound which did not heal. This again necessitated surgery and Sumner took six weeks' leave. However, this time, Sumner delayed the surgery for a week past when it should have been performed in order to properly brief Wall and his department and to transition work in progress in anticipation of his upcoming absence.

As with the prior surgery, the March 2014 surgery resulted in amputation of the fifth metatarsal bone. However, this surgery was more severe as Sumner developed an abnormally high potassium level and kidney failure due to the one-week delay in surgery. When Sumner was admitted to the hospital, surgery had to be delayed an additional four days due to the

---

[1] 29 U.S.C. § 2611(2)(A) defines "eligible employee" as one who has been employed "for at least 12 months by the employer with respect to whom leave is requested under section 2612 of this title; and for at least 1,250 hours of service with such employer during the previous 12-month period."
[2] 29 U.S.C. § 2611(4)(A) defines an "employer" as "any person engaged in commerce or in any industry or activity affecting commerce who employs 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year."

complications he had developed. Sumner was in the hospital from March 20, 2014 through March 29, 2014, and subsequently returned to work on April 28, 2014 on a limited basis (20 hours for the first two weeks).

On April 29, 2014, Wall summoned Sumner to a meeting. During that meeting, Wall presented Sumner with a Performance Improvement Plan ("PIP"). The PIP addressed multiple areas of alleged performance deficiencies for which Sumner had not been previously counseled or spoken to about. In the PIP, Wall accused Sumner of not communicating with her about his medical leave and not providing adequate orientation for a new compensation analyst. Sumner alleges that the PIP was in retaliation for him exercising his rights under the FMLA, both in April 2012 and March 2014.

Sumner had previously received positive performance evaluations for each year of his employment. Specifically, Sumner received ratings of "Successful" for review year 2008, 2009, 2010, and 2011, and received a rating of "Exceeds Expectations" for 2012. Sumner was not given a performance evaluation in 2013–just the PIP.

On September 2, 2014, during a lunch meeting with Wall and the Director of Associate Relations, Kim Burch, Sumner was presented with a memorandum informing him that his position was being eliminated, effective October 3, 2014 due to an effort to "improve efficiency" and "reduce costs." There was no mention of performance issues in the memorandum. That was Sumner's last day of employment.

Sumner filed his three-count Complaint on January 21, 2015. Count One alleged interference with rights granted by the FMLA; Count Two alleged retaliation in violation of the FMLA; and Count Three alleged retaliation in violation of the Affordable Care Act. After Defendants filed their original partial motion to dismiss, Plaintiff subsequently filed an Amended Complaint on April 3, 2015, which eliminated Count Three of his original Complaint. (ECF No. 21.) In his Amended Complaint, Plaintiff requests an award of compensatory damages, plus demonstrated past and future pecuniary damages, liquidated damages, as well as costs and

attorneys' fees. Defendants then filed the present Motion on April 17, 2015. The issues have been fully briefed, and are now ripe for review.

## II. LEGAL STANDARD

Rule 12 of the Federal Rules of Civil Procedure allows a defendant to raise a number of defenses to a complaint at the pleading stage, including failure to state a claim. A motion to dismiss for failure to state a claim upon which relief can be granted challenges the legal sufficiency of a claim, rather than the facts supporting it. Fed. R. Civ. P. 12(b)(6); *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007); *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). A court ruling on a Rule 12(b)(6) motion must accept all of the factual allegations in the complaint as true, *see Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999); *Warner v. Buck Creek Nursery, Inc.*, 149 F. Supp. 2d 246, 254–55 (W.D. Va. 2001), in addition to any provable facts consistent with those allegations, *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984), and must view these facts in the light most favorable to the plaintiff, *Christopher v. Harbury*, 536 U.S. 403, 406 (2002).

To survive a motion to dismiss, a complaint must contain factual allegations sufficient to provide the defendant with "notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Rule 8(a)(2) requires the complaint to allege facts showing that the plaintiff's claim is plausible, and these "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 & n.3. In other words, the plaintiff's complaint must consist of more than "a formulaic recitation of the elements of a cause of action" or "naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted). The Court need not accept legal conclusions that are presented as factual allegations, *Twombly*, 550 U.S. at 555, or "unwarranted inferences, unreasonable conclusions, or arguments," *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000).

//

### III. DISCUSSION

Defendants move the Court to dismiss Count I of the Amended Complaint ("Interference with Rights Granted by the FMLA") pursuant to Rule 12(b)(6). In Count I, Sumner alleges that Defendants "interfered with [his] rights to take leave under the FMLA by placing him on a PIP on the day after he returned to work, without him having received a sub-standard performance review which was MWHC's normal practice and procedure, and without ever having counseled or otherwise reprimanded [him] on the alleged performance deficiencies contained in the review." (Am. Compl. ¶ 87). Sumner alleges that Defendants terminated him "because he exercised his right to take medical leave consistent with MWHC's policies, and consistent with the FMLA." (*Id.* at ¶ 91.)

"The FMLA prohibits employers from interfering with the ability of employees to exercise their substantive (or 'prescriptive') rights under the FMLA." *Ainsworth v. Loudon Cnty. Sch. Bd.*, 851 F. Supp. 2d 963, 975 (E.D. Va. 2012) (citing 29 U.S.C. § 2615(a)(1)). One such right under the FMLA is an eligible employee is entitled to a total of 12 workweeks of leave during any 12-month period for, among other reasons, a serious health condition. 29 U.S.C. § 2612(a)(1)(D). Upon returning from leave, any eligible employee must "be restored by the employer to the position of employment held by the employee when the leave commenced," 29 U.S.C. § 2614(a)(1)(A), or "be restored to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment," 29 U.S.C. § 2614(a)(1)(B).

To state a claim for interference with FMLA rights, a plaintiff must plead that "(1) she was an eligible employee, (2) the defendant was an employer as defined under the FMLA, (3) she was entitled to leave under the FMLA, (4) she gave the employer notice of her intention to take leave, and (5) the employer denied the employee FMLA benefits to which she was entitled." *Ainsworth*, 851 F. Supp. 2d at 975 (citations and internal quotation marks omitted). Additionally, a plaintiff must show prejudice. *Downs v. Winchester Med. Ctr.*, 21 F. Supp. 3d 615, 617 (W.D. Va. 2014) (citations omitted). Prejudice can be proven by showing that "an

5

employee loses compensation or benefits by reason of the violation, sustains other monetary losses as a direct result of the violation, or suffers some loss in employment status remediable through appropriate equitable relief." *Reed v. Buckeye Fire Equip.*, 241 F. App'x 917, 924 (2007) (internal citations and quotation marks omitted). Defendants take issue with the fifth element, arguing that the Complaint "affirmatively alleges that Mr. Sumner asked for, received, and took FMLA leave from his employment with Defendants on at least two separate occasions," (Mem. in Supp. of Mot. to Dismiss at 4), and also argue that Plaintiff failed to plead that he was prejudiced by the alleged interference, (*id.* at 5–6).[3]

As an initial matter, no uncertainty exists that Sumner received his FMLA requested leave and was reinstated after his return as required by the FMLA on two different occasions. First, in October 2012 Sumner was absent from work for six weeks due to surgery on his right foot. (*Id.* at ¶ 39.) He received a rating of "exceeds expectations" on his 2012 performance evaluation. (*Id.* at ¶ 49.) Second, in mid-March 2014 Sumner took another six weeks' leave for surgery on his left foot. (*Id.* at ¶ 57.) "Sumner delayed the surgery for a week past when it should have been performed in order to properly brief Ms. Wall and his department and to transition work in progress in anticipation of his upcoming absence." (*Id.*) He then returned to work on April 28. (*Id.* at ¶ 60.)

However, Sumner argues that just because Defendants granted him the requested FMLA leave and permitted him to return to work, Defendants still interfered with his FMLA rights. Specifically, Sumner argues that Defendants interfered with his FMLA leave in three distinct ways: (1) Defendants pressured Plaintiff to delay his FMLA leave by one week to complete assignments that Defendants believed had to be done before his leave could be taken; (2) Defendants expected and required Plaintiff to work while he was on FMLA leave; and (3) as

---

[3] As a subsidiary issue, the Court finds that Sumner clearly pleaded the first four elements required to state a claim of interference of rights under the FMLA. Sumner pled that he was an eligible employee, (Am. Compl. at ¶ 4), Defendants were employers as defined under the FMLA, (*id.* at ¶¶ 5, 8), he was entitled to take leave, (*see id.* at ¶¶ 39, 57), and he gave his employer notice of his intention take leave, (*id.* at ¶¶ 40, 57). Therefore, these elements will not be addressed in this memorandum opinion.

soon as Plaintiff returned from his FMLA leave, he was immediately placed on a PIP (and subsequently terminated), which "chilled" his desire to take future FMLA leave. However, as detailed below, each of Plaintiff's arguments fails to establish a claim of interference.

As to Plaintiff's first claim, Plaintiff is correct that "[i]nterfering with the exercise of an employee's rights would include, for example, not only refusing to authorize FMLA leave, but discouraging an employee from using such leave." 29 C.F.R. § 825.220(b). However, Plaintiff fails to plead that Defendants discouraged him from exercising his rights. Plaintiff's Amended Complaint states that "Wall *expressed concern* over the amount of work to be done, which was the main factor in Mr. Sumner delaying his surgery by a week, at great cost to his own health." (Am. Compl. ¶ 69.) The Complaint additionally alleges that delaying his surgery allowed Plaintiff "more time for projects Ms. Wall had assigned and which she indicated *had* to be completed." (*Id.* at ¶ 57.) However, these allegations fall far short of those complained of in the cases cited in Plaintiff's opposition brief. (*See* Opp'n Mem. at 9.) For example, in *Bravo v. Union County Board of Elections*, No. 12-2848 (DRD), 2013 WL 2285780 (D.N.J. May 23, 2013), plaintiff requested emergent FMLA leave. *Id.* at *9. However, her employer told her "it was not a good time for her to go out on FMLA leave," and her employer failed to provide plaintiff with FMLA paperwork in a timely manner. *Id.* Based on these factors, the New Jersey district court denied the employer's motion for summary judgment on plaintiff's interference claim. *Id.* Here, although Plaintiff's opposition attempts to assert that Plaintiff "felt pressured to delay his surgery," (Opp'n Mem. at 8), the Amended Complaint does not support such an assertion. Rather, the Complaint alleges that *Plaintiff* "delayed the surgery for a week past when it should have been performed in order to properly brief Ms. Wall and his department and to transition work in progress in anticipation of his upcoming absence." (Am. Compl. ¶ 57.) Therefore, Plaintiff's first claim must fail.

Next–Plaintiff's claim that Defendants' interfered with his FMLA rights by requiring him to work while out on FMLA leave. "While the mere fact that an employer communicates with an

7

employee during FMLA leave is not *per se* evidence of interference, calling [the employee] can be probative of [interference] when the [employee] is asked to continue working." *Chauncey v. Life Cycle Eng'g, Inc.*, No. 2:12-cv-968-DCN, 2013 WL 5468237, at *13 (D.S.C. Sept. 30, 2013) (internal citations and quotation marks omitted). In other words, if the employer requires an employee to perform work during FMLA leave, then generally the employer's actions would constitute interference. *Id.* In contrast, "fielding occasional calls about one's job while on leave is a professional courtesy that does not abrogate or interfere with the exercise of an employee's FMLA rights." *Id.* (citation and internal quotation marks omitted).

In his Amended Complaint, Plaintiff alleges that during his FMLA absence, he "attempted to join at lest [sic] one meeting by phone, and stayed in contact with his group, answering questions by phone when needed." (Am. Compl. ¶ 61.) Additionally, during his hospital stay, "Sumner checked in with Ms. Holko [a new compensation analyst] . . . to insure Ms. Wall received any information she needed." (*Id.* at ¶ 72.) These allegations do not rise to the level of interference. Nowhere in the Amended Complaint does Plaintiff allege that Defendants required him to work during FMLA leave or that Defendants contacted him during his absence. Instead, the Amended Complaint alleges that Plaintiff *voluntarily* checked in and stayed in contact with his group members. The Complaint simply does not support Plaintiff's allegation that Defendants expected him to work while he was on FMLA leave. (*See* Opp'n Mem. at 9.)

Third, Plaintiff alleges that as soon as he returned from his FMLA leave, he was immediately placed on a PIP (and subsequently terminated), which "chilled" his desire to take future FMLA leave. (Opp'n Mem. at 11) (citing *Fleck v. WILMAC Corp.*, No. 10-05562, 2011 WL 1899198 (E.D. Pa. May 19, 2011)). Plaintiff further alleges that "given the serious complications arising from [the March 2014] surgery (namely kidney failure), it was more than probable that Mr. Sumner would have [sic] need more FMLA leave to address his lingering health issues." (*Id.*) Although Fourth Circuit precedent relevant to Plaintiff's third claim is non-existent, other circuits have adopted a similar "chill theory" for FMLA interference claims. *See Conoshenti v.*

8

*Pub. Serv. Elec. & Gas Co.*, 364 F.3d 135, 146 n.9 (3d Cir. 2004); *Smith v. BellSouth Telecomms., Inc.*, 273 F.3d 1303, 1313 (11th Cir. 2001); *Bachelder v. Am. W. Airlines, Inc.*, 259 F.3d 1112, 1124 (9th Cir. 2001). However, these cases provide little guidance on what must be pled in order to survive a motion to dismiss. Regardless, here Plaintiff's Amended Complaint fails to allege *anything* regarding "chilling" Plaintiff's future FMLA requests. Nowhere in the Amended Complaint does the word "chill" even appear.

Furthermore, 29 C.F.R. § 825.220(c) provides that "employers cannot use the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions or disciplinary actions," or else employers may be held liable for FMLA interference. Although the regulation speaks in terms of interference, courts including those within the Fourth Circuit have held that this regulation instead "unambiguously speaks" in terms of retaliation. *Downs*, 21 F. Supp. 3d at 617–18; *see also Bullock v. Kraft Foods, Inc.*, No 3:11CV36-HEH, 2011 WL 5872898, at *6 (E.D. Va. Nov. 22, 2011); *Rountree v. City of Portsmouth*, No. 2:11CV106, 2011 WL 5101761 (E.D. Va. Oct. 26, 2011).[4] Therefore, Plaintiff's claim here that he suffered discipline by being placed on a PIP as the result of taking his FMLA leave will instead be considered under his retaliation claim.[5] For those reasons, the Court finds Plaintiff's third claim unavailing.

Finally, "because [Sumner] has failed to allege that [he] was actually denied any FMLA benefits, [Sumner] has failed to allege any prejudice related to FMLA interference." *Downs*, 21 F. Supp. 3d at 619; *see also* 29 U.S.C. § 2617(a)(1)(A)(i) (prejudice exists where an employee loses compensation or benefits "by reason of the violation" or "as a direct result of the violation").

//

//

---

[4] Defendants concur that at best the allegations asserted in the Amended Complaint allege retaliation, not FMLA interference. (Mem. in Supp. of Mot. at 5.)

[5] In Count II of his Amended Complaint, Plaintiff states that "MWHC and Ms. Wall retaliated against Mr. Sumner by placing him on a PIP after he returned from taking medical leave under [sic] pursuant to MWHC's policy, and consistent with the FMLA." (Am. Compl. ¶ 97.)

## IV. CONCLUSION

For the foregoing reasons, the Motion is GRANTED and accordingly Count I of Plaintiff's Amended Complaint is hereby DISMISSED.

Let the Clerk send a copy of this Memorandum Opinion to all counsel of record.

An appropriate Order will issue.

_____/s/_____
James R. Spencer
Senior U. S. District Judge

ENTERED this ___28th_____ day of May 2015.